## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

WILLIAM BALLIET, *Administrator of the Estate of Mary Ellen Balliet*,

                    Plaintiff,

    v.

LUZERNE COUNTY, et al.,

                    Defendants.

CIVIL ACTION NO. 3:22-CV-02032

(MEHALCHICK, J.)

## MEMORANDUM

This action was commenced by the filing of a complaint in the Court of Common Pleas of Luzerne County on December 5, 2022, by William Balliet ("Plaintiff") as the Administrator of the Estate of Mary Ellen Balliet ("Ms. Balliet"). (Doc. 1-1). Plaintiff alleges claims against Defendants Luzerne County ("the County"), Correctional Officer T.J. Brown, Correctional Officer William Wilk,[1] LPN Emmett, Correctional Officer Calvey, Lieutenant Kate Romiski, Cheri Steever, Carleen Kendig, Donald Fuller, Nancy Somers, Shana Feichter (collectively, "County Defendants"), Wellpath, LLC ("Wellpath"), Chris Gale, Holly Green, Tony Iannuzi, Jade Talarico, and Nelson Iannuzzi (from Wellpath on, collectively, "Wellpath Defendants").[2] (Doc. 1-1). The action was removed to the United States District Court for the Middle District of Pennsylvania on December 21, 2022. (Doc. 1). The Complaint alleges violations of the Eighth and Fourteenth Amendment pursuant 42 U.S.C. § 1983 ("§ 1983") and state law negligence. (Doc. 1-1, at 36-54). Presently before the Court

---

[1] William Wilk is listed twice on the docket, both as "William Wilk" and "C.O. William Wilk."

[2] The City of Pittston was also a party to this litigation but was terminated on February 15, 2023.

are a motion to dismiss and a partial motion to dismiss filed the County Defendants and Wellpath Defendants respectively. (Doc. 4; Doc. 10). For the following reasons, Wellpath Defendants' motion to partially dismiss the Complaint will be **DENIED** (Doc. 10) and County Defendants' motion to dismiss the Complaint will be **DENIED in part** and **GRANTED in part** (Doc. 4).[3] Count Three of the Complaint will be **DISMISSED** (Doc. 1-1, ¶¶ 165-174).

## I.   BACKGROUND AND PROCEDURAL HISTORY

The following factual background is taken from the Complaint. (Doc. 1-1). On August 11, 2020, Ms. Balliet was picked up by City of Pittston law enforcement officials pursuant outstanding capias warrants. (Doc. 1-1, ¶ 22). Ms. Balliet was brought to Luzerne County Correctional Facility ("LCCF"). (Doc. 1-1, ¶ 22). During her intake, Ms. Balliet had trouble walking and standing and it was confirmed that she was under the influence of drugs. (Doc. 1-1, ¶¶ 25-32). It was also noted that Ms. Balliet had a history of "Benz/Heroin" use. (Doc. 1-1, ¶¶ 25-32). Once her intake was complete, Ms. Balliet was brought to a cell. (Doc. 1-1, at 13-14). During her escort, Ms. Balliet "was in obvious physical distress," walked slowly and "with great difficulty," and "had to lean on the metal lockers for support." (Doc. 1-1, at 13-14).

After several hours in her cell, Ms. Balliet was taken to LCCF's medical unit. (Doc. 1-1, ¶¶ 40-43). Again, it was documented that Ms. Balliet experienced trouble moving and appeared to be in severe physical distress. (Doc. 1-1, ¶¶ 40-53). Ms. Balliet was examined,

---

[3] County Defendants argue that all claims asserted against Defendants in their official capacity should be dismissed. (Doc. 8, at 19). Plaintiff responds to this argument by stating no official capacity claims are pled in the Complaint. (Doc. 9, at 24-25). Therefore, this argument is moot and will not be addressed.

given a shot of Toradol, then escorted back to her cell. (Doc. 1-1, ¶¶ 46-48). While in her cell, Ms. Balliet was checked by nurses several times, who noted severe changes in her vitals and recorded her increasing reported pain. (Doc. 1-1, ¶¶ 50-59). Otherwise, Ms. Balliet received no significant medical care. (Doc. 1-1, ¶¶ 50-59).

Ms. Balliet was not moved again until the next morning, August 12, 2020, after almost twenty-two hours had passed. (Doc. 1-1, ¶¶ 60-63). At this time, she was escorted to the infirmary. (Doc. 1-1, ¶¶ 60-63). Ms. Balliet still could not walk unassisted and "was essentially dragged by Nurses. . . to a medical examination chair in the infirmary." (Doc. 1-1, ¶¶ 62, 64). While in the infirmary, Ms. Balliet was again checked by several nurses who subsequently placed her in a recorded cell for monitoring. (Doc. 1-1, ¶ 70). Ms. Balliet remained in this cell from approximately 9:00 AM until her death around 2:00 PM. (Doc. 1-1, ¶¶ 61-70). Video footage of Ms. Balliet in this cell shows her attempting to lift her body onto her cot and failing (Doc. 1-1, ¶¶ 71, 108, 121, 148); rolling around in pain on her bed and the floor, (Doc. 1-1, ¶¶ 79-80, 88-89, 92, 103, 105, 107); panting, (Doc. 1-1, ¶¶ 77, 86, 102, 125, 145); knocking on her door and begging for assistance (Doc. 1-1, ¶¶ 76, 95-98); falling off her bed and struggling to climb back on it, (Doc. 1-1, ¶¶ 120-124); crying for help, often while on the floor, (Doc. 1-1, ¶¶ 85, 124-125, 139, 154); motioning towards her chest "as though she were having a problem with her heart or chest," (Doc. 1-1, ¶¶ 84, 137, 139); breathing rapidly (Doc. 1-1, ¶ 102); and making disturbed facial expressions. (Doc. 1-1, ¶¶ 85, 90, 100). As Ms. Balliet's condition was obviously deteriorating during her time in he recorded cell, the monitoring nurses only intervened to provide Ms. Balliet with food, liquid, ice, and painkillers that were "administered with great difficulty." (Doc. 1-1, ¶¶ 112, 143, 146-163). The monitoring nurses also reprimanded Ms. Balliet as she "remained on the floor in agony," laughed and smirked

at Ms. Balliet as she experienced "excruciating pain and severe distress," and left Ms. Balliet unattended as she "remained on the floor crying in pain and grabbing at her chest." (Doc. 1-1, ¶¶ 134, 138-39, 144-46, 184).

Around 1:30 PM, a nurse came to check Ms. Balliet's vitals for the first time in over four hours. (Doc. 1-1, ¶ 165). Around this time, Ms. Balliet became unresponsive. (Doc. 1-1, ¶¶ 168-184). Multiple nurses then attempted to get a blood pressure reading on Ms. Balliet, administer a dose of Narcan, place an oxygen mask on her face, and perform CPR as she "lay motionless on the floor." (Doc. 1-1, ¶ 177). EMS arrived around 1:55 PM and the responders immediately attempted to aid with CPR. (Doc. 1-1, ¶ 214). All efforts to resuscitate Ms. Balliet failed. (Doc. 1-1, ¶¶ 170-217). A little after 2:00 PM, at age thirty, Ms. Balliet passed away in LCCF's custody. (Doc. 1-1, ¶ 217).

On December 21, 2022, this action was removed from Luzerne County Court of Common Pleas to the Middle District of Pennsylvania on the basis of federal question jurisdiction. (Doc. 1). In his Complaint, Plaintiff alleges the following Counts: Count One: Denial of Medical Care under 42 U.S.C. § 1983 against Nurses Iannuzzi, Gale, Green, Steever, Talarico, Fuller, Somers, Kendig, Emmett and Feichter; Count Two: Denial of Medical Care against the County and Wellpath; Count Three Failure to Intervene in the Denial of Medical Care under 42 U.S.C. § 1983 against Lieutenant Romiski, and Correctional Officers Wilk, Calvey, and Brown; Count Four: State Law Negligence against Nurses Iannuzzi, Green, Talarico, and Somers; and Count Five: State Law Negligence Vicarious against Wellpath for the conduct of Nurses Iannuzzi, Green, Talarico, and Somers. (Doc. 1-1, at 36-47).

On December 28, 2022, County Defendants filed a motion to dismiss. (Doc. 4). On

January 11, 2023, County Defendants filed a brief in support of their motion. (Doc. 8). On January 24, 2023, Plaintiff filed a brief in opposition. (Doc. 9). On February 8, 2023, County Defendants filed a reply brief. (Doc. 12).

On January 30, 2023, Wellpath Defendants filed a motion to partially dismiss the Complaint and a brief in support. (Doc. 10; Doc. 11). In their brief in support Wellpath Defendants provide that their "Motion is 'partial' in that Defendants do not challenge Plaintiff's Complaint as to the state law negligence claims." (Doc. 11, at 2). On February 13, 2023, Plaintiff filed a brief in opposition to Wellpath Defendants' motion. (Doc. 13). Wellpath Defendants filed a reply brief on February 27, 2023. (Doc. 16). Accordingly, both motions are ripe and ready for discussion.

## II.   LEGAL STANDARDS

### A.   MOTION TO DISMISS

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint are true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). Although a court must accept the factual allegations in a complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Additionally, a court

need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

In *Ashcroft v. Iqbal*, the United States Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 556 U.S. 662, 679 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In evaluating a motion to dismiss, a court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

B.  42 U.S.C. SECTION 1983

Plaintiff assert federal civil rights claims pursuant to 42 U.S.C. § 1983, which provides a private cause of action for violations of federal constitutional rights. The statute provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To succeed on a 42 U.S.C. § 1983 claim, a plaintiff must demonstrate that the defendant, acting under color

of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995).

    C. Motion to Strike

Rule 12(f) of the Federal Rules of Civil Procedure permits the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The "purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *Natale v. Winthrop Res. Corp.,* No. 07-2686, 2008 WL 2758238, at *14 (E.D. Pa. July 9, 2008) (internal quotation marks omitted).

"Content is immaterial when it has no essential or important relationship to the claim for relief. Content is impertinent when it does not pertain to the issues raised in the complaint. Scandalous material improperly casts a derogatory light on someone, most typically on a party to the action." *Champ v. USAA Casualty Insurance Company*, 2020 WL 1694372, at *2 (E.D. Pa. 2020); quoting *Lee v. Eddystone Fire & Ambulance*, No. 19-cv-3295, 2019 WL 6038535, at *2 (E.D. Pa. Nov. 13, 2019) (quotation omitted). "[S]triking a pleading or a portion of a pleading 'is a drastic remedy to be resorted to only when required for the purposes of justice.' "*Id.;* quoting *Lee v. Dubose Nat'l Energy Servs., Inc.*, No. 18-cv-2504, 2019 WL 1897164, at *4 (E.D. Pa. Apr. 29, 2019) (same). Thus, motions to strike pursuant to Rule 12(f) are generally disfavored "unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." *Natale*, 2008 WL 2758238, at *14 (quoting *River Rd. Devel. Corp. v. Carlson Corp.,* No. 89-7037,1990 WL 69085, at *2 (E.D. Pa. May 23, 1990)); *Eddystone Fire*, 2019 WL 6038535 at *3 (same).

Further, "[w]hen faced with allegations that could possibly serve to achieve a better understanding of plaintiff's claims or perform any useful purpose in promoting the just disposition of the litigation, courts generally deny such motions to strike." *Cestra v. Mylan, Inc.*, No. 14-825, 2015 WL 2455420, at \*7 (W.D. Pa. May 22, 2015) (quoting *Eisai Co. v. Teva Pharm. USA, Inc.*, 629 F. Supp. 2d 416, 425 (D.N.J. 2009), *as amended* (July 6, 2009)).

## III. MOTION TO DISMISS

### A. FOURTEENTH AMENDMENT DENIAL OF MEDICAL CARE

In Count One of the Complaint, Plaintiff alleges Ms. Balliet was deprived of adequate medical care in violation of either the Eighth Amendment's prohibition on cruel and unusual punishment or the Due Process Clause of the Fourteenth Amendment. (Doc. 1-1, at 36). Because Ms. Balliet was a pretrial detainee, her claims are "properly analyzed under the Fourteenth Amendment, rather than the Eighth Amendment, which bars 'any form of punishment at all' from being imposed upon pretrial detainees[.]" *Bailey v. Kirsch*, 438 F. Supp. 3d 399, 403 (E.D. Pa. 2020) (quoting *Bell v. Wolfish*, 441 U.S. 520, 579-80 (1979)). However, courts in this Circuit analyze a pretrial detainee's claims of inadequate medical care under the Fourteenth Amendment using the same standard as a convicted prisoner's claims under the Eighth Amendment cruel and unusual punishment standard. [4] *Thomas v. Cumberland Cty.*, 749

---

[4] Plaintiff requests this Court apply the objective reasonableness standard set out by the Supreme Court in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015). In *Kingsley*, the Supreme Court held that proving an excessive force claim under the Fourteenth Amendment requires a pretrial detainee to show only that the force was "objectively unreasonable." *Kingsley*, 576 U.S. at 392. *Kingsley* does not require the pretrial detainee to show the correctional officers were subjectively aware that their use of force was unreasonable. *Kingsley*, 576 U.S. at 392. The Third Circuit has declined to decide whether this objective reasonableness analysis should be applied to a Fourteenth Amendment claim for deliberate indifference to serious medical need. *Moore v. Luffey*, 767 Fed. Appx. 335, 340 n.2 (3d Cir. 2019); *Thomas v. City of Harrisburg*, 88 F.4th 275, 281 n.23 (3d Cir. 2023). Some Circuits have applied *Kinglsey* in the context of a Fourteenth Amendment denial of medical care claim. *See, e.g., Brawner v. Scott*

F.3d 217, 223 n.4 (3d Cir. 2014); *Thomas v. City of Harrisburg*, 88 F.4th 275, 281 n.23 (3d Cir. 2023) ("Because the Fourteenth Amendment affords pretrial detainees protections at least as great as those available to inmates under the Eighth Amendment, we will review [Plaintiff's] claims for failure to render medical care under the Fourteenth Amendment by applying the same standard used to evaluate claims brought under the Eighth Amendment.").

To state a claim for the denial of medical care under the Eighth Amendment, a plaintiff must demonstrate: "(i) a serious medical need, and (ii) acts or omissions by [the Named Officers] that indicate deliberate indifference to that need." *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (citing *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)); *see also Mattern v. City of Sea Isle*, 657 F. App'x 134, 138 (3d Cir. 2016). "[A] medical need is 'serious' for purposes of a denial of medical care claim if it is either 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *Mattern*, 657 F. App'x at 139 (quoting *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326 (3d Cir. 1987)). In this context, deliberate indifference requires a showing that Defendants knew and consciously disregarded an excessive risk to a pretrial detainee's health and/or safety. *Mattern*, 657 F. App'x at 140.

---

*Cty.*, 14 F.4th 585, 593 (6th Cir. 2021) (*Kingsley* applies to pretrial detainee's denial of medical care claim); *Gordon v. County of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018) ("claims for violations of the right to adequate medical care brought by pretrial detainees against individual defendants under the Fourteenth Amendment must be evaluated under an objective deliberate indifference standard"). However, other Circuits have declined to extend the *Kingsley* standard to cases implicating a pretrial detainee's medical care. *Cope v. Cogdill*, 3 F.4th 198, 207, n.7 (5th Cir. 2021); *Whitney v. City of St. Louis*, 887 F.3d 857, 860 n.4 (8th Cir. 2018). Because here the Court finds Plaintiff's deliberate indifference to serious medical need claim survives under the Eighth Amendment standard, the Court declines to opine on the applicability of *Kinglsey* at this time.

Shana Feichter, Donald Fuller, Carleen Kendig, Cheri Steever, Diane Emmett, and Chris Gale (collectively, "Medical County Defendants") argue Plaintiff's denial of medical care claim should be dismissed because he cannot demonstrate Medical County Defendants were deliberately indifferent to Ms. Balliet's serious medical condition, as they checked on her multiple times during her time at LCCF. (Doc. 8, at 8). Medical County Defendants contend their actions were more akin to negligent misdiagnosis or inadvertent failure to provide care which do not rise to the level of a constitutional violation. (Doc. 8, at 13). Plaintiff refutes this contention, arguing that the Complaint adequately alleges Medical County Defendants were aware of Ms. Balliet's need for medical treatment but refused to provide it. (Doc. 9, at 14). Specifically, Plaintiff argues that considering Ms. Balliet's "highly disturbing" condition, Medical County Defendants failed to arrange a transfer for her to a hospital. (Doc. 9, at 14). Also, that even though "Ms. Balliet was physically, mentally and emotionally decomposing in the recorded cell in the infirmary. . . [Medical County Defendants] gave Ms. Balliet no medical care, did not check her vitals, and left her to spiral to a condition that was beyond saving." (Doc. 9, at 14).

According to Wellpath Defendants (together with Medical County Defendants, "Medical Defendants"), Plaintiff's claim for deliberate indifference to a serious medical need must fail because "Plaintiff's Complaint provides a clear timeline of medical treatment and assistance that was provided to Ms. Balliet for her conditions and refutes any claim that Moving Defendants were deliberately indifferent to Ms. Balliet's medical needs." (Doc. 11, at 7). Plaintiff responds to this averment by pointing to various allegations in the Complaint highlighting intervals of time spanning between one and eleven hours when Ms. Balliet was "not even in the presence of any medical staff" as her medical condition was "spiraling and

deteriorating." (Doc. 13, at 16). Also, Plaintiff details the "entirety of medical 'care'" received by Ms. Balliet during her time at LCCF, which consisted mainly of vitals checks and the administration of painkillers.   (Doc. 13, at 17). Plaintiff avers this "care" was wholly insufficient considering the severity of Ms. Balliet's condition. (Doc. 13, at 17). Plaintiff maintains that "Ms. Balliet had a serious medical need. Individual Wellpath Defendants did next to nothing and allowed Ms. Balliet's medical condition to spiral to a point where she was beyond saving." (Doc. 13, at 18).

To sustain a claim of deliberate indifference to a serious medical need against a prison official, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Woloszyn v. Cty. of Lawrence*, 396 F.3d 314, 321 (3d Cir. 2005). The Third Circuit has found deliberate indifference where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). The Third Circuit has also provided that "[n]eedless suffering resulting from the denial of simple medical care, which does not serve any penological purpose, . . . violates the Eighth Amendment." *Atkinson v. Taylor*, 316 F.3d 257, 266 (3d Cir. 2003). Ultimately, a prison official is deliberately indifferent when he or she "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Parkell v. Danberg*, 833 F.3d 313, 335 (3d Cir. 2016).

Plaintiff has sufficiently alleged a claim for deliberate indifference to Ms. Balliet's serious medical need against all Medical Defendants. The Court agrees that Plaintiff has pled

"in painstaking detail the medical emergency unfolding with his daughter during her thirty-six hours in LCCF, including her difficulty walking, her irregular breathing patterns, her pained expressions, her cries for help, her alarming (and changing) vital signs, and, in short, her desperate need for emergent medical care." (Doc. 9, at 13). The Complaint provides, "Ms. Balliet's need for medical treatment was so obvious that a lay person would have easily recognized the necessity for that treatment and the need for Ms. Balliett to be transferred to a hospital on an emergent basis." (Doc. 1-1, ¶ 248). This allegation is supported by the following factual averments: for the majority of her time at LCCF Ms. Balliet could not walk, stand, or push herself up off the floor, Ms. Balliet cried out in pain and begged for help on multiple occasions, Ms. Balliet's breathing was noticeably rapid, especially as she clutched her chest signaling a need for assistance, Ms. Balliet's facial expressions showed that she was in extreme distress, yet she received little to no intervention from the numerous nurses watching her and who were employed both by Wellpath and the County, and finally, that, during the last hour of Ms. Balliet's life, she remained largely unresponsive. (Doc. 1-1, ¶¶ 85-86, 90, 95-100, 102, 109, 120-27, 154, 184, 191-217). According to the Complaint, even as Ms. Balliet experienced these extreme symptoms, Medical Defendants failed to adequately treat her symptoms or facilitate her transport to the hospital and that by the time EMS was finally called, it was far too late. (Doc. 1-1, ¶¶ 214-217, 238, 248). Thus, the Complaint provides more than adequate circumstantial evidence to suggest the Medical Defendants should have known Ms. Balliet was at risk for serious, or even fatal, harm and acted indifferent to her serious medical needs. *See Thomas*, 88 F.4th at 283 (finding a claim for denial of medical care survives where plaintiff alleged prison officials ignored the substantial risk posed to plaintiff by ingesting cocaine and delayed care his care by failing to take plaintiff to the hospital); *see also Ponzini v. Monroe Cnty.*,

897 F. Supp. 2d 282, 289 (M.D. Pa. 2012) ("The Third Circuit has found deliberate indifference to exist in cases where there was "objective evidence that [a] plaintiff had serious need for medical care," and such evidence was ignored by prison officials."). Plaintiff's claims go beyond misjudgment or mere negligence, especially considering Plaintiff's allegations that several individual Defendants laughed, lectured, and chastised Ms. Balliet as she suffered instead of offering her "appropriate, necessary care in an appropriate manner." (Doc. 1-1, ¶¶ 127-28, 134, 239); *see Ponzini*, 897 F. Supp. 2d at 289 (finding Plaintiff had established a cognizable Fourteenth Amendment claim for deliberate indifference to a serious medical need where the complaint "goes beyond questioning the provision of specific treatment and raises the possibility that prison officials knew that Decedent suffered from a severe medical condition and did not attempt to provide appropriate, necessary care in a timely manner."); *see also U. S. ex rel. Walker v. Fayette Cnty., Pa.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979) (distinguishing between cases where a plaintiff alleges denial of medical care and inadequate medical treatment). Accordingly, Plaintiff's Fourteenth Amendment deliberate indifference to a serious medical need claim survives against all Medical Defendants. Defendants' arguments are better suited for review after discovery. *See Cyr v. Schuylkill Cnty.*, No. 3:22-CV-00453, 2023 WL 1107879, at *4 (M.D. Pa. Jan. 30, 2023) (finding plaintiff's denial of adequate medical care claim survives where the prison was informed of plaintiff's prior drug use, possible withdrawal and overdose, and plaintiff complained of breathing issues and exhibited extreme symptoms but prison officials failed "recommend that he be transported to a hospital or other care facility," instead opting just to provide plaintiff with painkillers and liquids).

B. *MONELL* LIABILITY

In Count Two of the Complaint, Plaintiff asserts his denial of medical care claims under 42 U.S.C. § 1983 against the County and Wellpath. (Doc. 1-1, at 38-40). Municipalities and other local governmental entities or officials may not be held liable under federal civil rights laws for the acts of their employees under a theory of *respondeat superior* or vicarious liability. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *see also Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1027 (3d Cir. 1991). However, they may be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). To sustain a *Monell* municipal liability claim a plaintiff must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury" to prevail. *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997). This custom must be "so widespread as to have the force of law." *Brown*, 520 U.S. at 404; *see also Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (a policy is an official proclamation or edict of a municipality, while a custom is a practice that is "so permanent and well settled as to virtually constitute law") (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990)) (citations omitted). A plaintiff must further "allege that a 'policy or custom' of [the defendants] was the 'moving force' behind the [constitutional] violation." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 107 (3d Cir. 2002) (citing *Brown*, 520 U.S. at 404). A municipality can be held liable on the basis of failure to train when "that failure amounts to 'deliberate indifference . . . [of the constitutional] rights of persons . . . .'" *Woloszyn v. Cty. of Lawrence*, 396 F.3d 314, 324 (3d Cir. 2005) (citations omitted). There must also be a causal nexus, in that the "'identified deficiency in [the] training

program must be closely related to the ultimate [constitutional] injury.'" *Woloszyn*, 396 F.3d at 325 (citations omitted).

Any analysis of a claim under *Monell* requires separate consideration of two distinct issues: "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so whether the [municipality] is responsible for that violation." *Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 120 (1992). Thus, a municipality or other local government may be liable under this section only if the governmental body itself "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation. *Connick v. Thompson,* 563 U.S. 51 (2011); *Monell*, 436 U.S. at 692. However, under § 1983, local governments are responsible only for "their own illegal acts," and "are not vicariously liable under § 1983 for their employees' actions." *Connick*, 563 U.S. at 60. Accordingly, plaintiffs who seek to impose liability on local governments for federal civil rights violations must prove that "action pursuant to official municipal policy" caused the injury complained of. *Connick*, 563 U.S. at 60.

Guided by these threshold principles, the Third Circuit Court of Appeals has further explained that there are "three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983:

> The first is where the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy. The second occurs where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself. Finally, a policy or custom may also exist where the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.

*Natale*, 318 F.3d at 584 (internal quotation marks and citations omitted).

### 1. The County

According to the County, "because there was no underlying constitutional violation . . . *Monell* liability cannot lie." (Doc. 8, at 16). The County also contends that Plaintiff has failed to allege facts in support of a deficient policy or procedure relative to the medical care provided at LCCF. (Doc. 8, at 16). Plaintiff disagrees, arguing that he has sufficiently alleged both an underlying constitutional violation and "ample factual allegations regarding the County's constitutionally deficient policy, practice and/or custom of denying adequate medical care in LCCF." (Doc. 9, at 19). The Court agrees with Plaintiff.

Plaintiff not only alleges that the County has failed to sufficiently staff their facilities with nurses, train said nurses, and establish a policy for handling emergent medical needs, but also that the County's custom of providing inadequate medical care has resulted in at least nine deaths of individuals in the custody of LCCF over the last six years. (Doc. 1-1, ¶¶ 19-221, 225-229). These allegations are sufficient to sustain a *Monell* claim at the motion to dismiss stage. *See Brown v. Erie Cty.*, No. 20-251, 2022 WL 900308, at *1 (W.D. Pa. Mar. 28, 2022) (permitting plaintiff to proceed *Monell* claim premised on a denial of medical care claim where plaintiff alleged insufficient staffing and inadequate training); *see also Kitchen v. Clinton Cty.*, No. 19-1936, 2020 WL 3052864, at *5 (M.D. Pa. June 8, 2020) ) ("Where a municipal body fails to establish a policy which creates a risk that is sufficiently obvious as to constitute deliberate indifference to an inmate's medical needs, a prisoner may have a civil rights action"); *see also McPherson v. County of Dauphin*, No. 19-1865, 2020 WL 1558206, at *5 (M.D. Pa. Mar. 24, 2020) ("the lack of an affirmative policy regarding how to address the serious medical needs of a detainee can give rise to *Monell* liability"). Accordingly, the Court will not

dismiss Plaintiff's *Monell* claim against the County. *See GRAHAM B.C. ROMAN, Plaintiff, v. COUNTY OF CHESTER, et al., Defendants. Additional Party Names: Aramark Corr. Servs., LLC, George Roberts, Howard Holland, Josh Maxwell, Karen Murphy, Komla Amouzou, Mark DiOrio, Morgan Taylor, PrimeCare Med., Inc., Ronald Phillips, Sundifu Dorley,* No. CV 23-4032-KSM, 2024 WL 2136010 (E.D. Pa. May 13, 2024) (declining to dismiss *Monell* liability claims in the context of a constitutional denial of medical care claim where plaintiff pled polices, customs, and inadequacies related to the alleged denial of adequate medical care).

### 2. Wellpath

Addressing Plaintiff's *Monell* claim against it, Wellpath argues:

> Plaintiff has failed to properly allege that Wellpath maintains a policy, custom, or practice of deliberate indifference to his serious medical needs which led to his alleged harm, but has merely employed the kind of vague, general accusations of various stripes of venal "corporate greed," which are only aspirational pleading substitutes, and of the kind which Courts in this Circuit have refused to allow to pass muster at the Rule 12 stage.

(Doc. 11, at 14).

Plaintiff responds:

> Wellpath similarly disregards the allegations in the Complaint concerning "Wellpath's Practices at LCCF and Nationwide." (Compl., ¶¶ 222-234). Wellpath has a history of failing to staff LCCF as required under its contract with the County, (Compl., ¶¶ 227-229), which is consistent with Wellpath's practices at other detention facilities. (Compl., ¶¶ 230-232). There is also a practice or custom of not having a doctor present at LCCF for months at a time. (Compl., ¶ 227). Similarly, Wellpath is alleged to have a nationwide practice of providing substandard medical care and relying on inexperienced and untrained workers. (Compl., ¶¶ 233-234). No mention of these allegations appears in Wellpath's supporting brief. (See Doc. 11, 14-17).

(Doc. 13, at 20-21).

For the reasons stated *supra* as they pertain to the County, Plaintiff's *Monell* claim against Wellpath similarly survives. The Complaint alleges Wellpath has a custom of insufficient

staffing, a policy of failure to properly train employees "in diagnosing, recognizing and/or treating inmates in need of emergent medical care and properly responding by sending individuals in those circumstances for outside medical treatment at a hospital," and "a policy, practice and/or custom of assuming that all physically deteriorating inmates are withdrawing from narcotics thereby demonstrating a policy, practice and/or custom of failing to consider the individual circumstances of each inmate to determine whether this assumption is incorrect." (Doc. 1-1, ¶¶ 227, 229, 255-256, 259-26). The Complaint also alleges that the Wellpath's customs have resulted in multiple deaths over the past several years and that "[l]ack of staffing at correctional facilities by Wellpath [] is not limited to Luzerne County." (Doc. 1-1, ¶¶ 218-222, 230). Taking these allegations as true for the purpose of a motion to dismiss, Plaintiff has met his pleading burden as to his *Monell* claim against Wellpath. *See Cyr,* *2023 WL 1107879,* at *4-5 (finding a *Monell* claim against prison medical care provider survives where plaintiff adequately alleges a constitutional denial of medical care claim and identifies "several policies, customs, or practices" that resulted in a constitutional violation, including failure to train staff). Accordingly, the Court will not dismiss Plaintiff's *Monell* claim against Wellpath.

     C.   Failure to Intervene

     Count Three of the Complaint asserts a failure to intervene in the denial of medical care claim under 42 U.S.C. § 1983 against Lieutenant Romiski, Correctional Officer Wilk, Correctional Officer Calvey, and Correctional Officer Brown (collectively, "Non-Medical County Defendants"). (Doc. 1-1, at 40-42). Non-Medical County Defendants argue this claim should be dismissed because "Plaintiff failed to plead the requisite facts to establish the Non-Medical County Defendants had a reason to believe the prison medical staff were mistreating

prisoners. From the moment Ms. Balliet entered the facility, her medical care was being overseen by medical personnel at the facility." (Doc. 8, at 18). Plaintiff argues that "Non-medical prison employees can, of course, be liable for failing to intervene in the denial of medical care to an inmate." (Doc. 9, at 21). Additionally, that:

> the Complaint contains facts that the non-medical prison officials had (1) a reason to believe (or actual knowledge) (2) that Ms. Balliet was mistreated or not treated by the medical personnel. All County Correctional Defendants are alleged to have encountered and observed Ms. Balliet in a highly disturbed and distressed state reflecting that, at best, Ms. Balliet was being mistreated by medical staff.

(Doc. 9, at 22).

Prison officials have a duty to take reasonable measures to guarantee the safety of inmates and therefore have a duty to intervene where a prisoner's constitutional rights are being violated. *See Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (internal quotation and citation omitted); *see Weimer v. Cty. of Fayette*, No. 17-1265, 2018 WL 4404055, at *8 (W.D. Pa. Sep. 14, 2018) ("It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.") (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). To prevail on a failure to intervene claim, a plaintiff must show: "(1) that the defendant failed or refused to intervene when a constitutional violation took place in his or her presence or with his or her knowledge; and (2) there was a 'realistic and reasonable opportunity to intervene.'" *Knight v. Walton*, No. 2:12-CV-984, 2014 WL 1316115, at *8 (W.D. Pa. Mar. 28, 2014) (quoting *Smith v. Mensinger*, 293 F.3d 641, 651 (3d Cir. 2002)); *see also DERRICK GIBSON, Plaintiff v. SUPERINTENDENT BERNADETTE MASON, et al., Defendants. Additional Party Names: Benjamin Liebersohn, Charles Stetler, Dennis Weiderhold, Julie Rodak, Lear, Mayernick, Robert Derr, Swartz, Wagner*, No. 3:22-CV-1538, 2024 WL 2057386, at

*7 (M.D. Pa. May 6, 2024). However, the Third Circuit has recently concluded that no such claim exists in the context of denial of medical care in correctional facilities. *See Thomas*, 88 F.4th at 278 ("The District Court ruled incorrectly when it recognized a claim of failure to intervene. . . neither our Court nor the Supreme Court have recognized the right to intervene in the context of the rendering of medical care"). In addressing whether a correctional officer was entitled to qualified immunity for failure to intervene in the denial of medical care, the Third Circuit held a prisoner does not have a clearly established right to have a prison official intervene in the medical context. *See Thomas*, 88 F.4th at 285 ("Though we have recognized a right to have a government actor intervene when the underlying constitutional violation involves excessive force or sexual assault of a person in custody or detention, we have since concluded that our precedent does not establish, let alone clearly establish, a right to intervention in other contexts. . . Because there is no clearly established right to intervention in the medical context, we need not address the [correctional officer's] contention that [Plaintiff] has failed to plausibly allege a violation of such a right."); *Wertz v. Inmate Calling Sols., LLC*, No. 2:23-CV-01045-CCW, 2024 WL 989405, at *7 (W.D. Pa. Mar. 7, 2024) ("This duty to intervene, however, has not been extended beyond the excessive use-of-force context or the custody-sexual-assault context."). This case was decided after the parties submitted their briefing and therefore has not been addressed by counsel.

Both the Non-Medical County Defendants and Plaintiff cite heavily to a different Third Circuit case in their briefs, *Spruill v. Gillis*, which provides:

> If a prisoner is under the care of medical experts. . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on.

372 F.3d 218, 236 (3d. Cir. 2004).

However, as pointed out by Plaintiff, the *Spruill* court also stated that a non-medical prison official cannot be liable for failure to intervene in medical care *unless* they have "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner[.]" 372 F.3d at 236. Plaintiff argues that is exactly what he has alleged in this case. (Doc. 9, at 21-22).

The Court agrees that Plaintiff has alleged that the Non-Medical Defendants witnessed Ms. Balliet suffering while under the care of Medical Defendants with little to no intervention. (Doc. 1-1, ¶¶ 40-50, 112, 137-146). However, consistent with the Third Circuit's recent holding in *Thomas v. City of Harrisburg*, Plaintiff's claim must fail as a matter of law because the Third Circuit has failed to recognize "a constitutional duty to intervene to prevent the violation of the right to medical care."[5] 88 F.4th at 285 n.55; *see Rossman v. PrimeCare Med. Inc.*, No. 4:21-CV-00703, 2024 WL 115203, at *12-13 (M.D. Pa. Jan. 10, 2024) (dismissing a failure to intervene in the denial of medical care claim against non-medical prison defendants after considering the Third Circuit's decision in *Thomas*). Furthermore, even if Plaintiff's claim were to survive, based on the *Thomas* decision it is readily apparent form the face of the Complaint that the Non-Medical County Defendants would be entitled to qualified immunity. *Thomas*, 88 F.4th at 285; *see Howell v. Young*, 530 F. App'x 98, 100 (3d Cir. 2013)

---

[5] Plaintiff only alleges his Fourteenth Amendment deliberate indifference to a serious medical need claim against the Medical Defendants. In *Thomas*, the Third Circuit provides, "a claim for failure to intervene would be almost identical to the underlying claim of failure to render medical care" as it would be impossible for any Defendant, including the correctional officers at issue in *Thomas*, "to have had knowledge of an ongoing violation of a right to medical care without themselves participating in that violation." 88 F.4th at 285 n.55. This suggests that the proper avenue to assert liability against *all* prison officials is through a claim for deliberate indifference to serious medical need under the Fourteenth or Eighth Amendment, not through a claim for failure to intervene.

(noting that qualified immunity may be raised *sua sponte* if the defense is apparent from the face of the complaint). Accordingly, Plaintiff's failure to intervene in the denial of medical care claim against Non-Medical County Defendants is to be **DISMISSED** with prejudice.

D. Punitive Damages

Both County Defendants and Wellpath Defendants argue that Ms. Balliet is not entitled to punitive damages because the complaint does not contain allegations of outrageous or extreme behavior. (Doc. 8, at 20). Plaintiff argues that because he has alleged reckless and callous indifference to Ms. Balliet's health and serious medical needs, his punitive damages demand should stand pending discovery.

Punitive damages are available in a Section 1983 action where an individual defendant's conduct "involves reckless or callous indifference to the federally protected rights of others." *Smith v. Central Dauphin Sch. Dist.*, 419 F. Supp. 2d 639, 649 (M.D. Pa. 2005). As described *supra*, the Court finds Plaintiff has sufficiently pled that Medical Defendants were deliberately indifferent to Ms. Balliet's serious medical need. Furthermore, "this Court has consistently held that it is premature to dismiss demands for punitive damages prior to discovery." *Campbell v. Balon*, No. 16- 779, 2017 WL 2880856, at *19 (M.D. Pa. July 6, 2017). Accordingly, the Court will not dismiss Plaintiff's claim for punitive damages against County Defendants or Wellpath Defendants at this time.

**IV.   Motion to Strike**

Wellpath Defendants request that this Court strike the introductory paragraphs of the Complaint because they are "highly argumentative and contentious." (Doc. 11, at 17-18). Citing this Court's authority to strike material that is "immaterial," "impertinent," and "scandalous" under Rules 8 and 12 of Civil Procedure, Wellpath Defendants contend

Plaintiff's introduction, which they redesignate an overture, serves "no proper purpose and should not be permitted." (Doc. 11, at 18). Plaintiff avers that "other courts have rejected the argument that Wellpath Defendants advance here." (Doc. 13, at 25). According to Plaintiff, the introduction to his Complaint is pertinent, relevant, and tied directly to Plaintiff's allegations. (Doc. 13, at 24). Plaintiff also states that the introduction is not prejudicial because "it is a recounting of the surveillance videos documenting the disturbing last thirty-six hours of Ms. Balliet's life." (Doc. 13, at 24).

To support their argument that the instant Complaint's introduction should be stricken, Wellpath Defendants appeal to another case heard by this Court, *Wagner v. Holtzapple*. 101 F. Supp. 3d 462, 488-89 (M.D. Pa. 2015). In *Wagner*, this Court was confronted with a similar request which the Court granted. 101 F. Supp. 3d at 488-89. However, the *Wagner* court found that the introduction paragraph at issue was "argumentative, impertinent and wholly irrelevant," because it was not focused on the allegations set forth in the complaint. 101 F. Supp. 3d at 488-89. Instead, the introduction contained "criticisms of the Court's prior decision detract from the dignity of the Court and are impertinent," as well as class allegations despite the fact that Plaintiff never filed a motion to certify class. 101 F. Supp. 3d at 489.

Here, while the Complaint's introductory paragraphs could be interpreted as argumentative and are largely repetitive of the claims set forth in the Complaint, the paragraphs are undoubtedly relevant to the case as a whole. "Although the introductory paragraphs [here] may be redundant and unnecessary, [Wellpath] Defendants have not shown that this section is so prejudicial that it should be stricken under Rule 12(f)." *Hatcher v. Hauffman*, No. 20-474, 2021 WL 3084921, at *2 (W.D. Va. July 21, 2021); (Doc. 11, at 17).

Wellpath Defendants' only particular gripe with Plaintiff's introductory paragraphs appears to be that the paragraphs will remain on the federal docket, where they could be read by potential jurors disobeying Court orders not to investigate the cases they are to decide. (Doc. 11, at 18). The Court finds argument this speculative argument unavailing, especially given requests to strike material from a complaint are "not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues." *Bloom v. Congregation Beth Shalom*, No. CIV. 13-1442, 2014 WL 356624, at *3 (W.D. Pa. Jan. 31, 2014) (quoting *Dann v. Lincoln Nat. Corp.*, 274 F.R.D. 139, 142-43 (E.D. Pa. 2011)). Accordingly, the Court will not strike Plaintiff's introductory paragraphs.

## V.  LEAVE TO AMEND

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Further, "[a] district court has 'substantial leeway in deciding whether to grant leave to amend.'" *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 564 F. App'x 672, 673 (3d Cir. 2014) (not precedential) (quoting *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)). Here, the majority Plaintiff's claims survive. Additionally, Plaintiff has not requested leave to amend. Accordingly, the Court will not grant leave to amend at this time and the case will proceed with the instant Complaint. (Doc. 1-1).

## VI.  CONCLUSION

For the foregoing reasons, Wellpath Defendants' motion to partially dismiss the Complaint will be **DENIED** (Doc. 10) and County Defendants' motion to dismiss the

Complaint will be **DENIED in part** and **GRANTED in part** (Doc. 4). Count Three of the Complaint, Plaintiff's failure to intervene claim against Non-Medical County Defendants, will be **DISMISSED with prejudice.** (Doc. 1-1, ¶¶ 165-174).

An appropriate Order follows.

BY THE COURT:

**Dated: May 20, 2024**

*s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States District Judge**